# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MARK O'BRIEN, an individual,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO D/B/A CENTURA HEALTH, a Colorado non-profit corporation,

Defendant.

---

## COMPLAINT WITH REQUEST FOR JURY TRIAL

---

COMES NOW, the Plaintiff, Mark O'Brien, by and through his attorney, Thomas H. Mitchiner, Mitchiner Law, LLC, and submits his Complaint and Request for Jury Trial against Defendant, Catholic Health Initiatives Colorado d/b/a Centura Health, and states as follows:

### NATURE OF THE CASE

This is an employment discrimination case concerning the discriminatory treatment of Mark O'Brien, a disabled male, by Catholic Health Initiatives Colorado d/b/a Centura Health [Centura Health]. The discriminatory and retaliatory practices, based on Mr. O'Brien's disability, include but are not limited to discriminating against Mr. O'Brien, failing to accommodate Mr. O'Brien's disability, and retaliating against Mr. O'Brien.

1

The discriminatory and retaliatory actions violated the Americans with Disabilities Act and the Americans with Disabilities Amendment Act, 42 U.S.C. §§ 12101 et. *seq.* [ADA].

## JURISDICTION AND VENUE

1. Jurisdiction is asserted under 28 U.S.C. § 1331.

2. This action is authorized and instituted according to the ADA.

3. The claims in issue arose in the State of Colorado.

4. All claims arose in the Judicial District of this Court.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (c).

## PARTIES

6. Plaintiff Mark O'Brien is a resident of the State of Colorado.

7. Mr. O'Brien most recently held the IT Service Center Analyst II position at Centura Health.

8. Defendant, Catholic Health Initiatives Colorado d/b/a Centura Health [Centura Health], is a hospital.

9. Centura Health is a Colorado non-profit corporation authorized to conduct business in Colorado and with its principal place of business in Colorado.

10. Mr. O'Brien is an employee under the ADA.

11. Centura Health is an employer under the ADA.

## ADMINISTRATIVE PROCEDURES

12. Before filing this action, Mr. O'Brien timely, properly, and lawfully exhausted all required administrative remedies.

13. Mr. O'Brien filed a timely charge of disability discrimination, failure to accommodate, and retaliation, in violation of the ADA, with the Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No. 541-2021-01407].

14. On June 16, 2023, the EEOC mailed a Notice of Right to Sue letter to Mr. O'Brien.

15. This action is timely filed because it is filed within ninety days of Mr. O'Brien's receipt of the Notice of Right to Sue letter issued by the EEOC.

## **BACKGROUND**

16. On or about May 11, 2018, Mr. O'Brien had a severe car accident. As a result of the car accident, Mr. O'Brien received a traumatic brain injury, which has caused him minor cognitive deficits.

17. Mr. O'Brien suffers from moderate-to-severe post-concussion symptoms such as noise sensitivity, sleep disturbance, fatigue, being irritable, feeling depressed, anxiety, feeling frustrated, forgetfulness, poor concentration, light sensitivity, and restlessness.

18. In addition, Mr. O'Brien suffers from a language processing disorder and attention deficit hyperactivity disorder [ADHD]. The disorder and ADHD make it difficult for Mr. O'Brien to process verbal language.

19. Mr. O'Brien's disabilities affect his major life activities of working, learning, concentrating, communicating, and interacting with others.

20. Mr. O'Brien started working at Centura Health on October 27, 2020, as an IT Service Center Analyst II.

21. At all times, Centura Health was aware of Mr. O'Brien's disabilities.

22. Esther Fuentes was Mr. O'Brien's direct supervisor and the person who hired Mr. O'Brien for the Analyst position.

23. Barb Gilmore was the IT Helpdesk Director and Ms. Fuentes's direct supervisor.

24. Mr. O'Brien went through Centura Health's training from October 27, 2020, through November 3, 2020.

25. After ending training, Mr. O'Brien immediately started to take phone calls.

26. On November 11, 2020, Mr. O'Brien had his first meeting with Ms. Fuentes.

27. In the meeting, Ms. Fuentes informed Mr. O'Brien that she thought he was not performing up to her expectations.

28. After the meeting, Mr. O'Brien called the Human Resources representative, Michaella Howell.

29. He told Ms. Howell about how Ms. Fuentes treated him and his disabilities.

30. On November 17, 2020, Mr. O'Brien and Ms. Fuentes had another one-on-one. In this meeting, Mr. O'Brien's coworker was present.

31. Ms. Fuentes, in front of Mr. O'Brien's coworker, scolded him and made him disclose his disabilities.

32. After the meeting, Mr. O'Brien contacted Human Resources to ask them to tell Ms. Fuentes to conduct the one-on-one meetings with Mr. O'Brien outside of the presence of his coworkers so he did not have to disclose his disabilities to them.

33. In December 2020, in consultation with Mr. O'Brien's doctors, Mr. O'Brien submitted reasonable accommodation requests to Centura Health.

34. Mr. O'Brien and his doctors met with Centura Health Human Resources to discuss his disabilities and the needed accommodations.

35. Ms. Fuentes was supposed to be on the call but failed to attend the meeting.

36. Mr. O'Brien asked Centura Health for the following accommodations: (1) additional breaks, (2) additional support for work-related questions and training, (3) more frequent meetings with his manager, (4) provide him with written instructions in addition to verbal instructions, (5) allow him to record meetings, (6) allow him additional time for projects, (7) allow him to take time for medical appointments and (8) to provide him with ear filters to help with background noise.

37. Centura Health allegedly granted these accommodations to Mr. O'Brien. However, in practice, Centura Health never followed through with the accommodation.

38. In January 2021, Ms. Fuentes took a leave of absence.

39. Ms. Fuentes returned from her leave of absence in the middle of February 2021.

40. On February 2, 2021, Ms. Gilmore placed Mr. O'Brien on a Performance Improvement Plan [PIP].

41. Mr. O'Brien, Ms. Fuentes, and Ms. Gilmore meet with each other eight times to discuss Mr. O'Brien's progress on the PIP.

42. In the meeting on February 16, 2021, Ms. Fuentes, and Ms. Gilmore informed Mr. O'Brien that they had noticed improvement, and he seemed to be doing fine.

43. In the March 9, 2021 meeting, Ms. Fuentes and Ms. Gilmore informed Mr. O'Brien about issues he had with spelling, grammar, and using shortened words. The supervisors allegedly had a problem with this because Mr. O'Brien worked on legal documents that needed to be correct.

44. Many of Mr. O'Brien's coworkers, not of his protected class, made similar errors but were not disciplined by Centura Health or placed on a PIP.

45. On March 16, 2021, in the PIP meeting, Mr. O'Brien's supervisors highlighted his excellent work.

46. On March 18, 2021, Mr. O'Brien could not clock in for work. Mr. O'Brien informed Ms. Fuentes of this, and she told him that she had made a mistake on his account and that he should email her his hours until the time clock was working for him.

47. Mr. O'Brien asked her to follow this instruction up in writing in line with his reasonable accommodation request, but Ms. Fuentes did not do this.

48. On March 24, 2021, Centura Health terminated Mr. O'Brien allegedly because of his performance.

49. Throughout Mr. O'Brien's time with Centura Health, Centura Health regularly and repeatedly failed to provide Mr. O'Brien with the accommodations it agreed to provide to him.

50. Ms. Fuentes failed to provide instructions to Mr. O'Brien in writing on many occasions. Mr. O'Brien's language processing disorder makes it difficult, if not impossible, for Mr. O'Brien to understand verbal instructions.

51. Written instructions in conjunction with verbal instructions help Mr. O'Brien understand the instructions so that he can follow them.

52. If Mr. O'Brien understands the instructions, he will be able to complete what is asked of him. If he does not understand the instructions, he will struggle to complete what is asked of him.

53. Ms. Fuentes' failure to accommodate Mr. O'Brien severely impacted Mr. O'Brien's performance and contributed to his alleged performance issues, which resulted in his termination.

### **First Claim for Relief**
(Americans with Disabilities Act – Disparate Treatment)

54. The foregoing allegations are realleged and incorporated by reference.

55. The ADA applies to Mr. O'Brien and Centura Health.

56. At all times in issue, Mr. O'Brien satisfactorily performed his duties.

57. At all times in issue, Mr. O'Brien was otherwise qualified to perform the duties of his position.

58. Centura Health discriminated against Mr. O'Brien because of his disabilities, described above, by intentionally depriving Mr. O'Brien of his right to be free from disability discrimination in the performance, enjoyment, continuation, rights, benefits, and privileges of his employment relationship with Centura Health.

59. Centura Health discriminated against Mr. O'Brien because of his disability: (a) with respect to his terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Mr. O'Brien in a way, that deprived or tended to

deprive, Mr. O'Brien of employment opportunities, or otherwise adversely affect his status as an employee.

60. Centura Health did not accommodate Mr. O'Brien's disabilities by (1) providing additional breaks, (2) providing additional support for work-related questions and training, (3) providing more frequent meetings with his manager, (4) providing him with written instructions in addition to verbal instructions, (5) allowing him to record meetings, (6) allowing him additional time for projects, (7) allowing him to take time for medical appointments and (8) providing him with ear filters to help with background noise.

61. Mr. O'Brien was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position he held with Defendant.

62. Centura Health placed Mr. O'Brien on a PIP and ultimately terminated him but did not terminate or place his coworkers not of his protected class for similar errors and mistakes.

63. Centura Health acted willfully, with malice or reckless indifference to the rights of Mr. O'Brien.

64. As a result of Centura Health's actions, Mr. O'Brien suffered damages in an amount to be proved at trial.

### Second Claim for Relief
(Americans with Disabilities Act – Failure to Accommodate)

65. The foregoing allegations are realleged and incorporated by reference.

66. Mr. O'Brien asserts a claim for the denial of his requested accommodation under the ADA.

67. The ADA forbids discrimination against a "qualified individual on the basis of disability."

68. Prohibited discrimination includes not making reasonable accommodations, such as acquiring or modifying equipment or devices, adjusting or modifying examinations, training materials, or policies, and making the workplace readily accessible to and usable by people with disabilities.

69. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."

70. Mr. O'Brien is a qualified individual with a disability.

71. Centura Health did not accommodate Mr. O'Brien's disabilities by (1) providing additional breaks, (2) providing additional support for work-related questions and training, (3) providing more frequent meetings with his manager, (4) providing him with written instructions in addition to verbal instructions, (5) allowing him to record meetings, (6) allowing him additional time for projects, (7) allowing him to take time for medical appointments and (8) providing him with ear filters to help with background noise.

72. Defendant cannot meet its burden to demonstrate that Mr. O'Brien's requested accommodation would have imposed an undue hardship on Defendant or that Mr. O'Brien posed a direct threat.

73. At all times herein, Mr. O'Brien was a qualified person with a disability under the ADA.

74. Defendant knew of Mr. O'Brien's disabilities, and his requests for a reasonable accommodation.

75. Defendant unreasonably failed to provide Mr. O'Brien the reasonable accommodations.

76. Defendant's refusal to provide the reasonable accommodations in issue to Mr. O'Brien constitutes intentional, willful, and unlawful disability discrimination in violation of the ADA.

77. As a result of Centura Health's actions, Mr. O'Brien suffered damages in an amount to be proved at trial.

### Third Claim for Relief
(Americans with Disabilities Act – Retaliation)

78. The foregoing allegations are realleged and incorporated by reference.

79. Mr. O'Brien asserts a claim of unlawful retaliation in violation of the ADA.

80. The ADA prohibits Defendant from unlawful retaliation and discrimination against Mr. O'Brien because he engaged in activities protected by the ADA.

81. The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA.

82. Mr. O'Brien engaged in protected activities under the ADA by repeatedly requesting that Defendant provide reasonable accomodations as outlined above.

83. Mr. O'Brien's first act of protected activity occurred in December 2020.

84. Mr. O'Brien's last act of protected activity occurred on March 18, 2021.

85. Defendant terminated Mr. O'Brien on March 24, 2021.

86. Defendant knew of Mr. O'Brien's protected ADA activities.

87. Defendant engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Mr. O'Brien.

88. Defendant's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendant officials, managers, and employees.

89. Defendant, contemporaneously with, and/or immediately after, Mr. O'Brien's repeated, protected activities, took actions against him that a reasonable employee would have found materially adverse, namely termination.

90. Defendant retaliated against Mr. O'Brien by subjecting him to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions.

91. A causal connection and/or a but-for causation exists between Mr. O'Brien's protected activities and the unlawful materially adverse employment actions taken by Defendant against Mr. O'Brien

92. Defendant's treatment of Mr. O'Brien, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by the ADA and Rehabilitation Act.

93. As a result of Centura Health's actions, Mr. O'Brien suffered damages in an amount to be proved at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Mark O'Brien respectfully prays for a judgment to be entered against Centura Health as follows:

A. Against Centura Health for back pay, loss of benefits, and all economic benefits associated with Mark O'Brien's employment, under the ADA, as allowed by law;

B. Against Centura Health for front pay under the ADA, as permitted by law;

C. A finding that Centura Health willfully violated ADA and for compensatory and punitive damages available to Mark O'Brien, under the ADA, as allowed by law;

D. Against Centura Health finding that it retaliated against Mark O'Brien in violation of the ADA;

E. Against Centura Health that it failed to accommodate Mark O'Brien as required by the ADA;

F. Against Centura Health for attorney fees and costs available to Mark O'Brien under the ADA, as allowed by law;

G. To award Mark O'Brien all other legal and equitable relief to which Mark O'Brien is entitled pursuant to any law that this Court deems just, equitable, and proper.

## JURY TRIAL REQUEST

Pursuant to Fed. R. Civ. P. 38 (a) (b) (c), and all applicable laws providing for a right to trial by jury, Mark O'Brien seeks a jury trial of all claims and issues in this action.

Respectfully submitted on September 11, 2023

By:

Mitchiner Law, LLC

*/s/ Thomas H. Mitchiner*
Thomas H. Mitchiner
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

Attorney for Mark O'Brien

Address of Plaintiff:

PO Box 5456 Greenwood Village, CO 80155